IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI`I

<table>
<tr><td>

SANFORD A. MOHR and TINA A.<br>
MOHR, Individually and as<br>
Co-Trustees of their October 15,<br>
1996 unrecorded revocable trust,<br><br>
        Plaintiffs,<br><br>
   vs.<br><br>
MLB SUB I, LLC; JOHN DOES 1-20;<br>
JANE DOES 1-20; DOE PARTNERSHIPS<br>
1-20; DOE CORPORATIONS 1-20; and<br>
DOE ENTITIES 1-20,<br><br>
        Defendants.

</td><td>

)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civ. No. 16-00493 ACK-WRP<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)

</td></tr>
</table>

## ORDER GRANTING DEFENDANT MLB SUB I'S MOTION FOR SUMMARY JUDGMENT AND ISSUING DECREE OF FORECLOSURE

The dispute underlying this litigation dates back to 2005. Plaintiffs-Counterdefendants Sanford A. Mohr and Tina A. Mohr (the "Mohrs") stopped making payments on a loan, and the original lender sought to foreclose shortly thereafter. Several assignments of the loan later, and following the Chapter 11 bankruptcy proceedings of now-dismissed defendant and prior owner BNC Mortgage, Inc. ("BNC"), the dispute came to a head before this Court in mid-2019 in the form of a motion for summary judgment filed by BNC and a corresponding joinder motion filed by Defendant-Counterclaimant MLB Sub I, LLC ("MLB"). After the Court granted summary judgment to the Defendants on most of the Mohrs' claims, the Mohrs were granted leave to amend

their complaint, which they did on October 30, 2019.  MLB counterclaimed, and now before the Court is MLB's motion for summary judgment (the "Motion"), ECF No. 128, in which it asserts that it is the current holder and owner of the Note and Mortgage and seeks a decree of foreclosure.

For the reasons discussed below, the Court GRANTS Defendant-Counterclaimant MLB's Motion for Summary Judgment.  The Court hereby issues a decree of foreclosure in favor of MLB, the holder of the underlying mortgage loan.  Likewise, the Court's holding necessarily disposes of Plaintiff's remaining claims, as further explained in this Order.

## BACKGROUND

Unless otherwise indicated, the following facts are undisputed.  They are principally drawn from the parties' concise statements of facts ("CSFs") and the evidentiary exhibits attached thereto.  See MLB's CSF, ECF No. 129; Mohrs' CSF, ECF No. 135.

## I.    The 2004 Mortgage Transaction and Subsequent Default

The mortgage transaction at issue took place in 2004 when, to refinance their home mortgage, the Mohrs executed a promissory note (the "Note") in favor of Finance America, LLC ("Finance America") in the amount of $467,500.  MLB's CSF ¶ 1; Mohrs' CSF ¶ 1 (admitting).  The note was secured by a mortgage

- 2 -

(the "Mortgage") executed in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as sole nominee for Finance America. MLB's CSF ¶ 2; Mot. Ex. 2, ECF No. 128-7. The parties executed the loan documents memorializing the transaction on April 16, 2004. MLB's CSF ¶¶ 1-2.

The Mohrs have not made any payments on the loan since late 2004. MLB's CSF ¶ 5. They have been notified by various owners throughout the years of the default, but they have disputed the validity of the debt. MLB's CSF ¶ 6; Mohrs' CSF at p.1 (admitting to ¶ 5 of MLB's CSF but noting that they "disputed liability on the claimed mortgage loan and debt").

## II.  Reassignments of the Mortgage

Based on the evidence and recorded documents submitted by MLB, the following tracks the various changes in ownership and recorded assignments since the Mortgage and Note incepted:

> 1.    On April 16, 2004, the Mohrs executed the Note and Mortgage, with Finance America as the original lender and MERS as the sole nominee for Finance America.

> 2.    In 2005, BNC merged with Finance America.

> 3.    On July 25, 2013, MERS as nominee for Finance America (which had merged with BNC) assigned the Mortgage to BNC's parent company, Lehman Brothers Holding, Inc. ("Lehman Brothers"). Mot. Ex. 3, ECF

No. 128-8, ECF No. 128 (the "MERS-Lehman Brothers
Assignment").  The MERS-Lehman Brothers Assignment was
recorded on April 22, 2014.

4.  On September 9, 2013, Lehman Brothers
entered into a Mortgage Loan Sale and Warranties
Agreement (the "Mortgage Sale Agreement") to sell its
interest in the Note and Mortgage to MLB or one of its
affiliates.[1/]  Mot. Ex. 7, ECF No. 128-12.

5.  On April 22, 2014, Lehman Brothers assigned
the Mortgage to MLB, and that assignment was recorded
the same day.  Mot. Ex. 4, ECF No. 128-9 (the "Lehman
Brothers-MLB Assignment").

The existence of these recorded assignments is
undisputed.  The Mohrs simply allege that the original Mortgage
and each of these assignments was fraudulent, and that the Note
was satisfied back in 2006.  See Mohrs' CSF ¶¶ 3-4, 6-10.

**III. The Lost Note Affidavit**

The original Note was lost at some point since it was
executed back in 2004 and before it was sold to MLB.  MLB's CSF
¶ 7.  MLB has presented a "Lost Note Affidavit" in place of the

---

[1/]  In its memorandum (ECF No. 128-1, "Mot."), MLB acknowledges a
discrepancy with the ultimate purchaser, which appears to be MLB, but the
Mortgage Sale Agreement was signed by Mariners LB Holdings, LLC.  See Mot. at
11; see also Mot. Ex. 10, ECF No. 128-15, at p. 13 of 20.  The Lehman
Brothers-MLB Assignment ultimately reflects MLB as the assignee.  See Mot.
Ex. 4.

original Note.  See Mot. Ex. 1, ECF No. 128-6.  The Lost Note Affidavit was executed on April 4, 2013, and identifies American Home Mortgage Corp. d/b/a American Home Mortgage ("AHM") as the owner of the Note.  See id.  The Lost Note Affidavit is signed by David Mitchell, an authorized Officer of AHM "by its attorney in fact" Homeward Residential, Inc., f/k/a American Home Mortgage Servicing, Inc. ("AHM Servicing").  Id.  Based on evidence in the record, AHM or AHM Servicing appears to have at some point been the owner or servicer of the loan.  See infra, footnote 14.  The Lost Note Affidavit states that "[t]he original Note could not be located after a thorough and diligent search, which consisted of searching through such records of [AHM] as were appropriate and reasonably accessible."  Id.  The Lost Note Affidavit also confirms that it "is intended to be relied on by the purchaser of the Note from the Company or from affiliate of the Company and such purchaser's successors and assigns."  Id.  A photocopy of the original Note is attached to the Lost Note Affidavit, and with the Note is an allonge[2/] containing an indorsement in blank.[3/]  See Mot. Ex. 1.

MLB has submitted evidence in the form of declarations

---

[2/]  An allonge is a slip of paper sometimes attached to a negotiable instrument for the purpose of writing indorsements, often when there is no space on the instrument itself.  See Black's Law Dictionary (11th ed. 2019).

[3/]  If an instrument is indorsed in blank (and the indorsement was properly affixed to the note), it would be a bearer instrument and therefore enforceable by the party in physical possession.  See Haw. Rev. Stat. § 490:3-205(b).

showing that it, through its custodian and counsel, has had and maintained possession of the original Mortgage and Lost Note Affidavit (which includes a photocopy of the Note and the allonge) since 2014, after it purchased the loan from Lehman Brothers.  MLB's CSF ¶¶ 9-10; see also Mot. Ex. 10; Mot. at 9. In addition, each page of the Note and Mortgage—including the adjustable rate rider—has been initialed by the Mohrs, the only exception being the prepayment rider page.[4/]  See ECF No. 128-6 (Note); ECF No. 128-7 (Mortgage).

## IV.  Procedural Background

This case began in state court back in 2005.  Its procedural history is thus long and complex, involving multiple defendants and a bankruptcy.  Rather than reciting this history in detail, the Court focuses on those events relevant to the Motion before it now.[5/]

The Mohrs filed their initial complaint in Hawai`i state court on April 19, 2005, and their first amended complaint several months later, against Finance America, MERS, and other entities.  See ECF No. 38-4 (initial complaint); ECF No. 38-14 (first amended complaint).  The Mohrs sought, inter alia, rescission of the Mortgage and damages under TILA, damages under

_____

[4/]  As addressed infra, the Mohrs dispute that the version they actually initialed is the same as the recorded version of the Mortgage.
[5/]  The Court's prior order ruling on BNC's summary judgment motion and MLB's joinder contains a detailed factual and procedural history as well. See ECF No. 94 at 2-7.

Hawai`i's unfair or deceptive acts or practices ("UDAP") law, and to quiet title. ECF No. 38-14. BNC—the successor by merger with Finance America—filed for bankruptcy a few years later, putting the state-court proceedings on hold.[6/] See ECF No. 94 ("Prior MSJ Order") at 4-5. While the stay was in place, the Mohrs filed a proof of claim in the bankruptcy proceedings, ECF No. 52-5, seeking the same relief sought in their state-court lawsuit: rescission and damages under TILA and UDAP. See id. Lehman Brothers filed objections on BNC's behalf, and the bankruptcy court ultimately granted those objections and disallowed and expunged the Mohrs' claims, with prejudice. See id. at 5-6; ECF No. 52-8 (bankruptcy order).

MLB intervened in the state-court action in 2016 and then removed it to federal court. See Prior MSJ Order at 6; see also ECF No. 1. The bankruptcy stay was eventually lifted and this Court heard arguments on a motion for summary judgment filed by BNC, ECF No. 51, as well as a substantive joinder motion filed by MLB, ECF No. 53. On June 13, 2019, the Court granted summary judgment to BNC. See Prior MSJ Order at 22. In large part, the Court held that res judicata barred the Mohrs' claims because they had already been litigated and decided in the bankruptcy proceedings. See id. at 9-20. The Court also

---

[6/] The bankruptcy proceedings were consolidated with those of BNC's parent company, Lehman Brothers.

granted MLB's joinder motion to the extent that it sought the same relief as BNC and denied the joinder motion to the extent that it went beyond the scope of BNC's corresponding motion. Id. The Court recognized MLB's privity with BNC, but expressly declined to decide the validity and ownership of the Mortgage and Note because doing so would exceed the relief sought by BNC in its motion. Id.

After the Prior MSJ Order disposed of the majority of their claims, the Mohrs sought leave to amend their complaint, which Magistrate Judge Porter granted in part. ECF Nos. 106 & 114. Meanwhile, the parties had stipulated to dismiss the action against BNC with prejudice. ECF No. 112. The Mohrs then filed their second amended complaint (the "Amended Complaint"),[7] ECF No. 115, on October 30, 2019, asserting four causes of action against MLB: (1) wrongful foreclosure, (2) declaratory relief under Haw. Rev. Stat. ("HRS") § 632-1, (3) quiet title, and (4) damages under UDAP.[8] Am. Compl. ¶¶ 9-19. MLB counterclaimed, seeking judicial

---

[7] The Court acknowledges MLB's observation that ECF No. 115, the document labeled "First Amended Complaint" on the docket is actually the second amended complaint. See Mot. 3 n.1; see also ECF No. 38-4 (complaint filed in state court) & ECF No. 38-14 (first amended complaint filed in state court). For consistency, the Court will simply refer to the operative complaint—that is, ECF No. 115—as the "Amended Complaint."

[8] Because the Amended Complaint no longer named MERS, Deutsche Bank National Trust Company, and HomeQ Servicing Corporation—all of whom had been named as defendants in the prior complaints—those parties were terminated and MLB is the sole remaining named defendant.

foreclosure, as well as equitable and declaratory relief. ECF No. 116 (the "Counterclaim").

MLB filed the instant Motion and CSF on January 20, 2020, seeking summary judgment on "its Counterclaim's first claim for relief for judicial foreclosure under Haw. Rev. Stat. § 667-1.5 . . . ." ECF No. 128 at 2. Specifically, MLB seeks a ruling that it is entitled to a decree of foreclosure, which it says would then by extension dispose of the Mohrs' remaining claims. See Mot. at 1. The Mohrs filed their Opposition to MLB's Motion, ECF No. 136, and their separate CSF, ECF No. 135, on February 4. In their Opposition, the Mohrs allude to cross-moving for summary judgment in their favor on the claims in their Amended Complaint. Opp. at 1. MLB filed its Reply, ECF No. 138, and responsive CSF, ECF No. 137, on February 11, and the Court heard oral arguments on February 25.

At the hearing, the Court directed the parties to file supplemental briefing calculating the outstanding amount of the loan with interest. MLB properly filed its brief containing detailed calculations of the loan balance. See ECF No. 142. The Mohrs responded not by addressing the validity of those calculations, but by rehashing the same arguments they made in their Opposition and by presenting entirely new factual evidence not presented to the Court in the original motions briefing. See ECF No. 143. In light of that new evidence, the Court

provided MLB with a final opportunity to respond, which it did on April 6, 2020.  See ECF No. 146.

## STANDARD

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Federal Rule of Civil Procedure 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); see also Broussard v. Univ. of Cal., 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Celotex, 477 U.S. at 323, 106 S. Ct. at 2553); see also Jespersen v. Harrah's Operating Co., 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the

material facts [and] come forward with specific facts showing that there is a genuine issue for trial." <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 1356 (1986) (citation and internal quotation marks omitted and emphasis removed); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2509-10 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." <u>In re Barboza</u>, 545 F.3d 702, 707 (9th Cir. 2008) (citing <u>Anderson</u>, 477 U.S. at 248, 106 S. Ct. at 2510). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. <u>Matsushita Elec. Indus. Co.</u>, 475 U.S. at 587, 106 S. Ct. at 1356; <u>see also</u> <u>Posey v. Lake Pend Oreille Sch. Dist. No. 84</u>, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (internal citation and quotation omitted)).

**DISCUSSION**

At issue in this case is whether MLB is entitled to a decree of foreclosure. The Mohrs argue that MLB has failed to prove the requisite judicial-foreclosure elements. Their primary arguments are that the Note was paid off (though they do not say by whom) and that MLB cannot establish the chain of title showing that it is the lawful owner of the Note and Mortgage. The Court disagrees and holds that MLB has proven the requisite foreclosure elements and that it has standing to foreclose on the Mohrs' property. The Mohrs' conclusory claims of fraud and attempts to impose a nonexistent requirement that MLB prove the validity of each transfer of title are unpersuasive. Accordingly, as discussed below, the Court GRANTS summary judgment to MLB and enters a decree of foreclosure as stated. To the extent that the Mohrs cross-move for summary judgment on their claims in the Amended Complaint, such motion is DENIED.

**I.   MLB has Established the Foreclosure Elements and that it has Standing to Foreclose**

In general, there is no federal foreclosure law; rather, state law serves as the law of decision in foreclosure actions. See Whitehead v. Derwinski, 904 F.2d 1362, 1371 (9th Cir. 1990), overruled on other grounds by Carter v. Derwinski, 987 F.2d 611 (9th Cir. 1993). Under Hawai`i law, a foreclosure

decree is appropriate if all four of the following material facts have been established:  (1) the existence of a promissory note, mortgage, or other debt agreement; (2) the terms of the promissory note, mortgage, or other debt agreement; (3) default by the borrower under the terms of the promissory note, mortgage, or other debt agreement; and (4) the giving of sufficient notice of default and that payment of the debt is due and owning.  IndyMac Bank v. Miguel, 117 Haw. 506, 520, 184 P.3d 821, 835 (Ct. App. 2008); see also McCarty v. GCP Mgmt., LLC, Civ. No. 10-00133 JMS/KSC, 2010 WL 4812763, at *8 (D. Haw. Nov. 17, 2010); Bank of Honolulu, N.A. v. Anderson, 3 Haw. App. 545, 551, 654 P.2d 1370, 1375 (Ct. App. 1982).

The foreclosing party's burden to prove its entitlement to enforce the note overlaps with the requirements of standing.  Bank of Am., N.A. v. Reyes-Toledo, 139 Haw. 361, 367-68, 390 P.3d 1248, 1254-55 (2017) ("Toledo I"); see also Bank of Am., N.A. v. Reyes-Toledo, 143 Haw. 249, 264-65, 428 P.3d 761, 776-77 (2018) ("Toledo II").  The "underlying 'injury in fact' to a foreclosing [party] is the mortgag[or]'s failure to satisfy its obligation to pay the debt obligation to the note holder."  Id. at 368, 390 P.3d at 1255.  Thus, to establish standing, the foreclosing party "must necessarily prove its entitlement to enforce the note as it is the default on the note that gives rise to the action."  Id. (citing HRS § 490:9-601).

As discussed in detail below, the record shows that MLB has established as a matter of law all four factors necessary for a foreclosure decree, and that it has standing to enforce the loan documents.

### a. MLB Has Established the Existence and Terms of the Note and Mortgage, the Mohrs' Default Thereunder, and the Notice of Default

First, MLB has established all four of the foreclosure factors as a matter of law. As to the first two factors, the existence of the Note and Mortgage is undisputed. MLB has offered evidence showing that on April 16, 2004, the Mohrs executed the promissory Note in favor of Finance America for $467,500, and, to secure payment on the Note, the Mohrs executed the Mortgage, which was recorded in the Bureau of Conveyances on April 27, 2004. MLB's CSF ¶¶ 1-2.

The Mohrs admit to executing the Note and Mortgage, but they maintain that the recorded version of the Mortgage is not the same version they signed, rendering it void. Mohrs' CSF ¶¶ 1-2; Mohr Decl. ¶¶ 8-13, 24-32. This Court already held in the Prior MSJ Order that such allegations of fraud and forgery could have been raised in the bankruptcy action and are thus barred by res judicata. See Prior MSJ Order at 12 ("If anything, these allegations are merely an 'extension of facts' already presented in the bankruptcy action, or facts that could have been raised in the bankruptcy action."). Accordingly, the

Court will not rehash the Mohrs' allegations of fraud or forgery in the Mortgage, when they surely have had in their possession copies of the recorded Mortgage and the version they allege signing all this time.  The Court reiterates its prior observation that the Mohrs have offered no explanation for failing to raise these allegations earlier.  <u>See</u> Prior MSJ Order at 11-13.

The terms of the Mortgage and Note do not appear to be in dispute anyway.[9/]  The Mohrs have not challenged the terms of the original Note at all; they only allege that it was satisfied in 2006 and that, regardless, MLB is not the proper party to now enforce payment of the Note (which they inexplicably say is no party at all, other than themselves as the owners of the property).  And their challenges to the Mortgage are focused not on the terms of the loan documents they admit signing, but on the validity of the recorded documents.  Although they argue that the recorded version of the Mortgage is not the same as the one they admit to signing, the Mohrs have not pointed to any material differences.  As discussed throughout this Order, their assertions of forgery and fraud are simply not supported by the evidence.  They have not shown that there was any misrepresentation of any party's obligations under the Mortgage,

---

[9/]  In fact, the Mohrs initialed each page of the Note and Mortgage, signaling their review of the terms.

or any reliance on such misrepresentations. Because there is no genuine dispute regarding the existence or terms of the Note and Mortgage, MLB has satisfied the first and second of the foreclosure requirements.

MLB has also shown—and the Mohrs have not disputed—that the Mohrs defaulted on the loan and were notified of such default, thus satisfying the third and fourth foreclosure factors. Roughly six months after executing the Note and Mortgage, the Mohrs stopped making the scheduled payments and have remained in default ever since.[10/] After the Mohrs became delinquent in their payments, written notice was provided concerning the default and the intention to accelerate the loan and foreclose the mortgage if the default was not cured.[11/] See Exs. 5 & 15 to MLB's CSF. Despite receiving notice, the Mohrs neglected to cure the default. Accordingly, there is no genuine dispute regarding the Mohrs being in default or having received notice of such default, and MLB has thus satisfied the third and fourth requirements to foreclose. See Anderson, 3 Haw. App. at 550, 654 P.2d at 1375.

---

[10/] The Mohrs claim that they cannot have been in default when the Mortgage and Note were paid off in 2006. As discussed in detail in this Order, the Mohrs have offered no persuasive evidence in support of their assertion that the note was paid off and satisfied.

[11/] The Mohrs do not contest this. They simply assert that they disputed the validity of the debt and that the debt was mysteriously paid off after the loan was securitized.

In sum, MLB has met its burden of proving all four of the foreclosure prongs, and the Mohrs have failed to "set forth specific facts showing that there is a genuine issue for trial." See Porter v. Calif. Dep't of Corrections, 419 F.3d 885, 891 (9th Cir. 2005). The Court now turns to the overlapping question of whether MLB has standing as the "person entitled to enforce" the Note and Mortgage.

### b. MLB Has Established That It Has Standing to Enforce the Note and Mortgage

As mentioned, the burden of proving entitlement to a foreclosure decree overlaps with the burden of establishing standing to foreclose. Whether a party has standing as a "person entitled to enforce" a promissory note is governed by statute:

> "Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 490:3-309 or 490:3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

HRS § 490:3-301. In other words, when a person is not the original payee identified on the note, there are three ways for a person to establish that it is the "person entitled to enforce" the note: It can show that it is (1) a holder of the

note, (2) a nonholder in possession of the note with the rights of a holder, or (3) not in possession of the note but entitled to enforce it pursuant to the cross-referenced statutes.

Here, MLB's standing arguments hinge on it being either or both a "holder" of the note and a person not in possession of the instrument but entitled to enforce it under HRS § 490:3-309, which governs enforcement of "lost, destroyed, or stolen" instruments. This latter concept allows a party to enforce a lost instrument if it can prove the terms of the instrument and its right to enforce the instrument. HRS § 490:3-309(a) lists three requirements for a person to enforce a lost instrument:

> (i) the person was in rightful possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

HRS § 490:3-309(a). If a person successfully proves the right to enforce the instrument under HRS § 490:3-309(a), the person is treated as having produced the original instrument. Id. § 490:3-309(b); see also id. § 490:3-308. Simply put, the plain meaning of HRS § 490:3-309 is that a person not in possession of

an original instrument is entitled to enforce it so long as the person was in possession and entitled to enforce it when the loss of possession occurred.

The Ninth Circuit has concluded that even where a person was not the party in possession of the note when it was lost, the rights to a lost note may still be enforced by a downstream assignee of the note. See In re Allen, 472 B.R. 559, 565-66 (9th Cir. B.A.P. 2012) (collecting cases and affirming the bankruptcy court's holding that "rights under a lost note may be assigned"). To establish a right to enforce a lost note under HRS § 490:3-309, courts rely on lost note affidavits, which are "used to establish a party's right to enforce a note even without possession of the original instrument." Specialized Loan Serv. LLC, Civ. No. RDB-16-3743, 2017 WL 1001257, at *2 n.3 (D. Md. Mar. 15, 2017).

There is very little case law interpreting Hawai`i's statute on enforcing lost instruments. MLB has offered one Ninth Circuit case in which a bankruptcy appellate panel held that an assignee of a lost note had standing to enforce the lost note under a Washington statutory scheme identical to the one at issue here. See In re Allen, 472 B.R. at 565-66. In In re Allen, the panel affirmed the bankruptcy court's finding that a lost note affidavit was an acceptable substitute for the original note because the affidavit complied with the statutory

requirements for enforcement of lost instruments, identical to those requirements in HRS § 490:3-309. Id. Although the party seeking to enforce the note was not the one in possession of the original note when it was lost, the panel agreed that it held the rights in the lost note pursuant to a subsequent assignment and its possession of the lost note affidavit. Id. at 566.

The panel went on to hold that, because the original note was indorsed in blank, it was a "bearer instrument," meaning it could be negotiated by transfer of possession alone. Id. at 567. Thus, the foreclosing party's showing that it had in its possession the lost note affidavit and a copy of the note indorsed in blank—which it had purchased from the prior owner— was sufficient to give it the "status of a holder and a 'person entitled to enforce' the instrument . . . ." Id.

To unpack the holding in In re Allen, a summary of the law concerning a "holder" of a negotiable instrument is useful. A "negotiable instrument" is an "unconditional promise or order to pay a fixed amount of money" if it, among other things, is "payable to bearer or to order at the time it is issued or first comes into possession of a holder." HRS § 490:3-104. If an instrument is indorsed in blank, it "becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." Id. § 490:3-205(b). "Negotiation" is defined as "a transfer of possession, whether voluntary or

involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder." Id. § 490:3-201(a). In turn, "Holder" is defined as "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." HRS § 490:1-201(b); see also In re Tovar, Nos. CC-11-1696-MkDKi, LA-10-41664-BR, LA-10-03016-BR, 2012 WL 3205252, at *5 (9th Cir. B.A.P. Aug. 3, 2012) (explaining the circumstances where a party is a "holder" of a negotiable instrument). In other words, like the court held in In re Allen, once a note indorsed in blank is negotiated, the subsequent party becomes a holder and, thereby, a person entitled to enforce the note. See id. § 490:3-201; see also In re Allen, 472 B.R. at 565-67.

Here, because it is undisputed that the original Note is lost and all that MLB has produced is the Lost Note Affidavit with a photocopy of the Note (showing the Mohrs' initials) and the allonge, the Court must decide whether MLB's possession of these items provides it with the present right to enforce the Note. The Court holds that it does.

### i. MLB's Right to Enforce the Note Based on the Lost Note Affidavit

MLB has submitted evidence showing that (1) a loan was made and secured by the Note and Mortgage in favor of Finance

America in April 2004; (2) the Note contained an allonge with an indorsement in blank; (3) the original Note was lost and a Lost Note Affidavit was signed in April 2013; and (4) MLB bought the Note and Mortgage from Lehman Brothers in September 2013, through the Mortgage Sale Agreement.[12/]  MLB has also submitted evidence establishing that it obtained possession of the Lost Note Affidavit in connection with its purchase of the loan.  MLB now relies on the Lost Note Affidavit as evidence of the terms of the original Note.

The Lost Note Affidavit produced by MLB is signed by "a duly authorized Officer" of AHM "by its attorney in fact" AHM Servicing.  <u>See</u> Lost Note Affidavit.  In this regard, the Lost Note Affidavit characterizes AHM as the lawful owner of the Note at the time the Note was lost and the affidavit sworn.  <u>See</u> <u>id.</u> The Lost Note Affidavit confirms that it may also be relied on by the purchaser and successors and assigns.  <u>Id.</u>  In turn, the Lost Note Affidavit encloses a photocopy of the original Note with each page initialed by the Mohrs, as well as a photocopy of the allonge with an indorsement in blank.

---

[12/]  The Mortgage Sale Agreement expressly lists—among other loan purchases—the transfer of the Mortgage and Note on the Mohrs' property, with reference to the Lost Note Affidavit.

Evidence in the record indicates that at some point AHM indeed came to own or service the mortgage.[13/]  Still, a few months after the Lost Note Affidavit was signed, the Mortgage and Note were sold and assigned from MERS (on behalf of the original lender, Finance America) to Lehman Brothers and then from Lehman Brothers to MLB.  MLB has submitted evidence showing that it purchased the rights under the Mortgage and Note for $466,737[14/] through the Mortgage Sale Agreement.  MLB has also provided evidence that it, through its custodian and counsel, has had and maintained possession of the original Lost Note Affidavit—which includes a photocopy of the original Note and allonge—since MLB purchased the loan.[15/]  MLB's CSF ¶¶ 9-10; see also Mot. at 9.

_____

[13/]  See ECF No. 52-5 at pp. 71-72 (letter dated June 10, 2008, advising the Mohrs that a new loan servicer, AHM Servicing, would be handling their payments); ECF No. 52-5 at p. 76 (December 2, 2008 letter sent by the Mohrs' attorney noting, "We are informed that the mortgage was assigned to American Home Mortgage").  Strangely, the latter correspondence was sent along with the Mohrs' signatures on a release of Mortgage, which was to be signed by BNC—presumably understood to be the owner of the Mortgage at the time—in connection with a settlement arrangement.  See id.  That settlement ultimately fell apart, and the release the Mohrs and BNC had signed was rescinded on February 4, 2009 (reestablishing BNC as the owner).  See Mot. at 10; Prior MSJ Order at 3-4; see also ECF No. 52-7 (recorded rescission).

[14/]  The Court understands that this is the amount MLB paid based on the copy of the Mortgage Sale Agreement submitted as an exhibit by MLB.  See Mot Ex. 7.  The Agreement lists the purchase price for each asset as the amount listed in the asset schedule, and the amount listed for the Mohrs' property is the unpaid principal balance, $466,737.  Id.

[15/]  In its supplemental brief meant to address interest calculations, the Mohrs raise for the first time the argument that AHM was in Chapter 11 bankruptcy since August 2007, which—according to the Mohrs—is further evidence that the Lost Note Affidavit is "a fraud on the Court."  ECF No. 143 ¶ 8.  The Mohrs fail to allege the particulars of any such "fraud," nor do they explain how the prior owner's bankruptcy would impact MLB's current status as the possessor of the Lost Note Affidavit.  Without such particulars, the Court sees no genuine issue of material fact raised by the Mohrs' unproven assertion that AHM was previously in bankruptcy.

The Mohrs have offered nothing to dispute these facts. Their only responses to MLB's reliance on the Lost Note Affidavit are that the Note was "in a REMIC [real estate mortgage investment conduit] and paid in 2006" and that "MLB cannot be a lawful beneficiary of a mortgage if it lacked possession of the promissory note." Opp. ¶ 36. On their first point, it is not clear to the Court why exactly the REMIC matters. Cf. Klohs v. Wells Fargo Bank, N.A., 901 F. Supp. 2d 1253, 1259-60 (D. Haw. 2012) (explaining that "[s]ecuritization does not alter the relationship or rights of the parties to the loan" and "does not modify the terms of the underlying obligations"). And the Mohrs' position that the Note was paid off and satisfied in 2006 is unpersuasive. The Mohrs' only support for this argument is a declaration made by their private investigator William J. Paatalo, who opined that the "chain of title for the Mohr Mortgage is clouded and cannot be verified" and that the Note appears to have been "paid off" sometime in 2006. See ECF No. 135-3 ("Paatalo Decl."). This declaration— which was previously before the bankruptcy court and then this Court in connection with BNC's motion for summary judgment—does not create any dispute as to the material facts: whether the Mohrs defaulted on the loan and whether MLB is the party with

standing to enforce Note and Mortgage.[16/]  The Mohrs have simply

provided no evidence that they or anyone on their behalf paid

off the loan.[17/]

      The Mohrs' second point regarding MLB lacking

possession of the original Note fares no better.  The statutory

scheme plainly provides for alternatives to enforcing an

instrument when a party seeking to enforce lacks possession of

the original document.  Here, MLB has offered into evidence the

Lost Note Affidavit, which establishes that a prior owner or

servicer had possession of the Note and affirmed under oath that

the Note was lost and its whereabouts could not be determined,

and that affiliates, successors, and assigns could rely on the

Affidavit as proof of the lost Note.  Likewise, MLB submitted

evidence that it purchased the Note and Mortgage and, in doing

---

[16/]  Paatalo's only "proof" that the loan has been paid off is a notation
in an electronic database of a trust showing a blank space for the "current
loan balance."  See Ex. 8 to Paatalo Decl.  The database contains several
blank spaces for what might be relevant information about the loan, and the
Mohrs have offered no evidence of any payment, including the amount, date, or
payor.  Not to mention, the "release" that Paatalo relies on to opine that
the Mortgage was satisfied was expressly rescinded after the settlement that
led to the initial release failed.  See Mot. at 5-6 & n.5 & n.6 (discussing
rescission based on failed TILA settlement); Reply at 8 & n.5 (same); see
also ECF No. 94 (prior order discussing the recording of the document
rescinding and cancelling the release, ECF No. 52-7).

[17/]  The Court also cannot help but wonder why the Mohrs would possibly
have agreed to enter into settlement discussions with BNC in 2008—two years
after they say the loan was paid off.  The settlement terms would have had
the Mohrs paying $463,394.32 to the prior lender, the amount of the original
loan less some bank charges and interest payments made, when the loan had
purportedly already been satisfied.  Faced with this question at the hearing,
counsel for the Mohrs indicated that they were not aware that the loan had
been paid by some unknown party within the trust until they hired Paatalo to
investigate the title in 2018.  Their phantom-payment theory defies common
sense.  And the Mohrs have offered no factual evidence of such a payment.

so, took possession of the original Lost Note Affidavit and allonge.  From that point on, the Lost Note Affidavit became the substitute for the Note.

Applying the analysis in In re Allen, the Lost Note Affidavit—standing in for the Note—is a bearer instrument, which may "be negotiated by the transfer of possession alone . . . ." See HRS §§ 490:3-204(a) & 490:3-205(b); see also In re Allen, 472 B.R. at 567 ("As a bearer instrument, the Note was negotiable by transfer of possession alone.").  Like the instrument in In re Allen, the Note here contains an indorsement in blank.  Although the indorsement in blank is on an allonge rather than on the face of the instrument like in In re Allen, that distinction is irrelevant because the undisputed evidence in the record shows that the allonge was "affixed to" the original Note.[18/]  Cf. In re Allen, 472 B.R. at 567 (discussing

_____

[18/]  Plaintiff has not challenged the validity of the allonge or whether it was "affixed to" the original Note.  Regardless, the evidence submitted by MLB establishes it was.  A review of the record shows that the allonge has been together with the copies of the Note submitted previously to this Court and to the bankruptcy court.  The allonge also references the correct loan number, and MLB's custodian has attested that the Note and allonge have been together in its possession since it purchased the loan.  Moreover, the photocopy of the original Note and allonge (both attached to the Lost Note Affidavit) have consistent facial markings showing staple marks in the top left corner and two-hole punches at the top center of the papers, which indicates that the allonge was affixed to the Note.  See Lost Note Affidavit. Compare In re Tovar, 2012 WL 3205252 at *6 (holding that bankruptcy court did not clearly err in holding that allonge was affixed to note even though document did not contain consistent hole-punch marks), with U.S. Bank, N.A. v. Miller, 2013 WL 12114100, at *7 (C.D. Cal. Sept. 30, 2013) (holding that evidence failed to show that allonge was "affixed to" the note because the documents were attached as separate exhibits and there was no indication that the allonge was physically attached).

In re Weisband, 427 B.R. 13 (D. Ariz. Bankr. 2010), which held that GMAC failed to establish that it was a holder of the note because the evidence did not demonstrate that the allonge was affixed to the note). The allonge is thus treated as being made on the face of the Note. See HRS § 490:3-204(a) ("For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument.").

Accordingly, because the Note is indorsed in blank, it is a bearer instrument enforceable by a showing of possession. MLB has established its uninterrupted possession of the Lost Note Affidavit since late 2014, which entitles it to enforce the terms of the Note. Under these circumstances, MLB has demonstrated that it has standing to pursue rights under the Note and Mortgage as a holder and person not in possession of the Note but entitled to enforce it pursuant to HRS § 490:3-309.[19/]

## ii. The Mohrs' Arguments in Opposition

The Mohrs assert three main arguments in opposition, none of which the Court finds persuasive. See Opp. ¶ 1. They

---

[19/] Because Hawai`i follows the common-law rule that a transfer of an obligation secured by a security interest (here, the Note) also transfers the security interest (here, the Mortgage on the property), HRS § 490:9-203(g), that MLB has established its interest in the Note is sufficient to also establish its ownership of the Mortgage, regardless of the Mohrs' claims of fraudulent assignments. Cf. Toledo I, 139 Haw. at 372 n.17, 390 P.3d at 1259 n.17.

argue that (1) MLB "never invested in the mortgage loan nor paid anything to the Mohrs," id. ¶¶ 17, 24; (2) the Note and Mortgage have been satisfied, id. ¶ 4; and (3) the original Mortgage and subsequent assignments are all void, id. ¶¶ 2, 5, 19-23.  The Court rejects these arguments and will address each in turn.

The Mohrs' first two arguments are easily disposed of. The Mohrs have not cited any Hawai`i law to support their argument that MLB could not have an interest in the Mortgage merely because it never "paid anything to the Mohrs."  Opp. ¶ 17.  MLB has submitted evidence of the Mortgage Sale Agreement with Lehman Brothers, through which the latter agreed to assign the Mortgage to MLB in exchange for payment.  Payment to the mortgagor is not a condition of foreclosing on mortgage.  On the Mohrs' second point—that the Note and Mortgage have been satisfied—the Court already rejected this argument above.  The Mohrs have not provided sufficient evidence to create a genuine issue of material fact as to whether the Note has been satisfied.

The Mohrs' third argument is the crux of their Opposition.  The Mohrs claim that the original Mortgage and subsequent assignments are all fraudulent and invalid.  In this regard, their Opposition makes sweeping allegations of fraud and forgery to contend that the original Mortgage and subsequent assignments are all void.

Not only does this argument fly in the face of the fact that the Mohrs' initials appear on each page of the Mortgage and Note, but as the Court alluded to above and discussed in its Prior MSJ Order, these arguments are largely barred by the doctrine of res judicata. <u>See</u> Prior MSJ Order at 11-12. The Mohrs' claims were or could have been raised in BNC's bankruptcy proceedings or in the prior summary judgment proceedings before this Court. And while the Mohrs have attempted to now clarify some of their past fraud allegations—including by listing the apparent "differences" between the recorded version of the Mortgage and the version the Mohrs claim they actually signed, Mohr Decl. ¶ 8—they have provided no indication for why these arguments were not raised before the bankruptcy court and then this Court in connection with BNC's motion for summary judgment and MLB's associated joinder.

Regardless, the Mohrs at best point out clerical errors or immaterial differences that have absolutely no impact on the terms of the agreement that they themselves admit to signing. <u>See</u> <u>Paik-Apau v. Deutsche Bank Nat'l Tr. Co.</u>, Civ. No. 10-00699 SOM/RLP, 2012 WL 6569289, at *3-4 (D. Haw. Dec. 14, 2012) (rejecting arguments that clerical errors rendered mortgage void when the mortgagor failed to show "that the substance of any of her own loan obligations [wa]s misrepresented or altered"); <u>U.S Bank Nat'l Ass'n v. Benoist</u>,

136 Haw. 373, 362 P.3d 806 (Table) (Ct. App. 2015) (rejecting arguments of fraud because the mortgagors failed to cite facts or law showing how supposed irregularities "caused them any harm of damages"). The Court holds that Mohrs have not raised any genuine issue of material fact with respect to the validity of the Mortgage.

As to the Mohrs' attempts to challenge the assignments of the Mortgage, res judicata would also apply because they raised or could have raised these challenges before the bankruptcy court after the assignments were made. Nonetheless, the Court will briefly address the Mohrs' arguments on this point. The Mohrs primarily argue that some entities lacked the power and authority to transfer the Mortgage, and therefore MLB is without good title to enable it to foreclose on the secured property. In essence, the Mohrs suggest that MLB must prove the validity of each and every transfer in the chain of title before it can foreclose on the property.[20/] While MLB must prove it has standing to foreclose, "this court has never required a lender to go back and establish that every person or entity who assigned a note and mortgage had the power to do so." Deutsche Bank Tr. Co. v. Beesley, Civ. No. 12-00067 SOM/KSC, 2012 WL

---

[20/] The Mohrs list "3 known fraudulent mortgage assignments involved in this case." Opp. ¶ 19. As MLB points out in its Reply, it is unclear what third assignment the Mohrs are referring to. See Reply at 11-12. The two relevant assignments are MERS-Lehman Brothers and Lehman Brothers-MLB.

5383555, at *4 (D. Haw. Oct. 30, 2012) (collecting cases); see also Paik-Apau, 2012 WL 6569289 at *4 ("There is simply no requirement that a lender go back through the chain of title before foreclosing on a loan to prove that every assignment of the loan was valid.").

Moreover, Hawai`i law is well settled that borrowers like the Mohrs generally lack standing to challenge the assignments of their loans. See Beesley, 2012 WL 5383555 at *4 (collecting cases). The Mohrs cannot show that they were parties to any of the assignments and, therefore, they cannot dispute the validity of those contracts. The Mohrs would only have authority to challenge the assignments as void, not merely as voidable. Igarashi v. Deutsche Bank Nat'l Tr. Co., Civ. No. 19-00083 JAO/KJM, 2019 WL 6689882, at *6 (D. Haw. Dec. 6, 2019); U.S. Bank N.A. v. Mattos, 140 Haw. 26, 35, 398 P.3d 615, 624 (2017); see Paik-Apu, 2012 WL 6569289 at *3 (holding that assignee had standing to foreclose even though a transfer to it may technically have been "voidable by one of the parties to the transfer"). None of the Mohrs' arguments support a finding that the Mortgage is void.[21/] Accordingly, the Mohrs lack standing to

---

[21/] See Lowther v. U.S. Bank N.A., Civ. No. 13-00235 LEK-BMK, 2014 WL 2452598, at *7 (D. Haw. May 30, 2014) (noting that allegations that a prior assignor lacked authority to assign a loan would "make the assignments voidable, not void, and thus do not support mortgagor standing"); see also Igarashi, 2019 WL 6689882 at *6-7 (collecting cases on void versus voidable). The only exception would be their argument under Hawai`i's UDAP law. Courts in this district have held that a contract formed in violation of UDAP laws

challenge—and MLB is not burdened with proving—the validity of each of the assignments.

The Mohrs' arguments also fail on the merits. The Mohrs argue in part that the MERS-Lehman Brothers Assignment is void because MERS lacked the agency and authority to transfer the Note and Mortgage. Their argument is that MERS's agency ended when Finance America was dissolved following its merger with BNC. Opp. ¶ 5. Thus, they say, MERS's interest in the Note and Mortgage had "expired" and it was not authorized to assign any interest to Lehman Brothers (who in turn assigned the Mortgage to MLB). Id. ¶ 19. These arguments are inconsistent with Hawai`i law.[22/] See In re Tyrell, 528 B.R. 790, 794 (D. Haw. Bankr. 2015) (holding that indorsements on a promissory note by out-of-business payees did not raise a genuine issue that the indorsements were forged); Bank of Am. v. Hill, 136

---

is void. See, e.g., Bateman v. Countrywide Home Loans, Civ. No. 12-00033 SOM/BMK, 2013 WL 2181131, at *1 (D. Haw. May 20, 2013). This argument holds no weight, however, because the Court has already dismissed the Mohrs' UDAP claims as barred by res judicata and conclusory allegations of UDAP violations would not create a material factual dispute. Cf. Igarashi, 2019 WL 6689882 at *7 ("Plaintiffs' conclusory claim that Defendants have engaged in unfair or deceptive trade practices is also insufficient to demonstrate standing to challenge the assignment.").

[22/] The Mohrs cite Toledo II as authority for their argument that the MERS-Lehman Brothers Assignment was a sham because MERS was acting as a "strawman." Yet Toledo II barely discusses the issue of MERS's authority or its position in the loan process. The court merely lists the homeowner's argument that a prior assignment was a sham because "MERS was not the mortgagee" and "acted only as a strawman" as one of several arguments that survived the motion to dismiss stage under the relaxed state-law pleading standard. See Toledo II, 143 Haw. at 265, 428 P.3d at 777 (noting that "it does not appear beyond doubt that Homeowner could not prove a set of facts entitling her to relief").

Haw. 372, 362 P.3d 805 (Table) (Ct. App. 2015) (rejecting a similar argument that MERS had improperly assigned a mortgage on behalf of the principal entity, which no longer existed at the time of the assignment). Regardless, the plain language of the Mortgage here clearly granted MERS the authority to act on behalf of Finance America <u>and its successors and assigns</u>. <u>See</u> Mortgage ("MERS is a separate corporation that is acting solely as nominee for Lender and Lender's assigns").

In sum, the Mohrs have failed to present sufficient evidence to contradict MLB's showing that its purchase through the Mortgage Sale Agreement and possession of the Lost Note Affidavit made it the holder or person not in possession but entitled to enforce the Note.[23/] MLB has presented evidence that

---

[23/] The evidence the Mohrs raised for the first time in their supplemental briefing, ECF No. 143, likewise does not present any material factual disputes. The Mohrs challenge MLB's standing based on (1) an assignment recorded just before the instant Motion was filed purporting to assign the loan from MLB to MCH SUB I, LLC ("MCH"); (2) evidence that, in the course of the dissolution of MLB and winding up its affairs, MLB cancelled its authority to transact business in Hawaiʻi; and (3) a loan-servicing document MLB submitted with its Motion that the Mohrs suddenly contend is evidence of the loan's zero balance. ECF No. 143 ¶¶ 1-4, 10-11. First, the loan document still provides no proof of payment and any disputes the Mohrs have with respect to MLB's specific balance or tax calculations can be taken up at a later time. Second, as MLB explains in its response, the assignment from MLB to MCH was subsequently rescinded, as was MLB's apparently erroneously-filed cancellation of authority. ECF Nos. 146-2 (rescission of assignment) & 146-3 (correction of cancellation). Regardless, none of these facts impact the Court's above analysis and conclusion that MLB has standing as the party entitled to enforce the Note. <u>See</u> <u>McCarty v. GCP Mgmt., LLC</u>, 495 F. App'x 836, 837 (9th Cir. Nov. 7, 2012) (explaining that entity without a certificate of authority may still maintain a counterclaim if it does not qualify as "transacting business" in the state (citing HRS §§ 428-1008, 428-1003)). As explained throughout this Order, MLB has established that it continues to possess the Lost Note Affidavit and there is no genuine issue of material fact as to it being the proper party to enforce the Note.

the Note and Mortgage were conveyed and delivered, with the right to enforce the terms of the original Note intact, from prior owner Lehman Brothers to MLB, and the Mohrs have provided no evidence to the contrary. The Mohrs' concocted arguments for avoiding foreclosure while it remains undisputed that they have not made any payments since 2004 are insufficient to preclude summary judgment on MLB's Counterclaim. Accordingly, to the extent that MLB seeks summary judgment on its Counterclaim seeking a decree of foreclosure, the Motion is GRANTED.

## II. The Mohrs' Remaining Claims are Dismissed

In their Opposition and at oral arguments, the Mohrs cross-moved for summary judgment on the claims in their Amended Complaint. See Opp. at 1. Because the Court has already held that MLB is entitled to summary judgment on its Counterclaim, the Mohrs' claims necessarily fail as well.

Counts I through III of the Amended Complaint allege wrongful foreclosure, and seek a declaratory judgment and to quiet title. Having held that MLB is entitled to a decree of foreclosure as the "person entitled to enforce" the Note and Mortgage, the Mohrs' claims for wrongful foreclosure, declaratory judgment, and quiet title based on the same material facts also fail.

Count IV of the Mohrs' Amended Complaint must also be dismissed pursuant to res judicata and the law of the case

doctrine.  Count IV of the Mohrs' Amended Complaint asserts UDAP violations:

> The acts and conduct of Defendant MLB Sub I, LLC, its agents, predecessors, constitute an unfair or deceptive trade practice in the conduct of their trade or commerce as either or both mortgage lenders, mortgage servicers, mortgage holders, or claimants, debt collectors, and/or finance companies.

Am. Compl. ¶ 17.  In its Prior MSJ Order addressing, in part, MLB's joinder motion, the Court unequivocally granted summary judgment to MLB on the Mohrs' UDAP claims.  The Mohrs have offered no reason to stray from its prior holding on this point. See Thomas v. Bible, 983 F.2d 152, 154 (9th Cir. 1993) ("[A] court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case."); see also United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997) (discussing circumstances where a court has discretion to depart from law of the case).  The Court thus declines to disturb its prior ruling that MLB is entitled to summary judgment for the UDAP claim.  That claim remains barred by res judicata.

For these reasons, MLB's Motion is GRANTED to the extent that it seeks summary judgment on all four counts of the Amended Complaint.  To the extent that the Mohrs seek summary judgment in their favor on the claims in the Amended Complaint, such relief is DENIED.

## III. MLB is Entitled to a Decree of Foreclosure

Because MLB has met the four prongs necessary for a decree of a foreclosure and shown that it has standing to foreclose, and because the Mohrs have failed to present any genuine issue of material fact, the Court holds that summary judgment in MLB's favor is appropriate.[24/]   The Court hereby orders an interlocutory decree of foreclosure.[25/]

In view of the ongoing COVID-19 pandemic, the government shutdown and stay-at-home order, the common-law duty to obtain the best price for the property as enunciated in Hungate v. Law Office of David B. Rosen, 139 Haw, 394, 408, 391 P.2d 1, 15 (2017), and the fact that the real estate market is inactive and Hawai`i has temporarily halted evictions, the Court

---

[24/]   The Court notes that it has considered the requirement in HRS § 490:3-309(b) that judgment not be entered in favor of MLB unless the Court finds that the Mohrs are "adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument."  The Mohrs have not offered any alternative party who may stake a claim in ownership of the Note and Mortgage, and the Court does not see any danger of double enforcement of the security interest.  At the hearing, MLB's counsel also represented and agreed that the foreclosure would be conditioned on MLB's agreement to indemnify the Mohrs in the event they are faced with enforcement of the same promissory Note by another party.

[25/]   At the hearing, counsel for MLB indicated that MLB was not seeking a deficiency judgment, even in the event the sale of the property is less than the outstanding loan balance.  Further, at the Court's request, MLB submitted proof of its calculation of the outstanding amount of the loan balance.  See Decl. of S. Lisby, ECF No. 142-1.  According to MLB, the outstanding principal balance is $466,737.39, and the interest at the adjustable rate through January 31, 2020, is $600,294.34.  Id. ¶ 4.  The Court hereby reserves the question of the exact amount (including interest) of the indebtedness secured by the Mortgage until after the confirmation of the sale.  See United States v. Guerette, Civ. No. 09-00133-ACK-KSC, 2010 WL 3260191, at *6, 10 (D. Haw. Aug. 13, 2010) (reserving the question of the exact amount owed until after the confirmation of sale) (citing Anderson, 3 Haw. App. at 550, 654 P.2d at 1375)).

finds that it would be inequitable and not in the interest of either party to proceed with the foreclosure sale under the existing conditions. The Court thus finds and so orders that the Commissioner may not commence any actions to foreclose on the Mohrs' property until further ordered by this Court. Either party may petition the Court to authorize proceeding with the sale when it appears that the foregoing conditions have ended and the real estate market is once again active; and the other party will have an opportunity to respond.

It is hereby ORDERED, ADJUDGED, and DECREED for the reasons stated herein that:

1.    MLB's Motion for summary judgment, ECF No. 128, is hereby GRANTED.

2.    The Mohrs are in default under the terms of the Note and Mortgage, which are currently held by MLB.

3.    The Mortgage currently held by MLB shall be and is hereby foreclosed as prayed, and the property described in Exhibit 2 to MLB's Concise Statement of Facts shall be sold at public auction or by private sale, without an upset price. Such sale of the subject property shall not be final until approved and confirmed by the Court. The Court hereby reserves the question of the exact amount (including interest) of the indebtedness secured by the Mortgage.

4. The Commissioner as appointed herein by the Court shall sell the property within four (4) months after the Commissioner is notified of a separate and forthcoming order issued by this Court in which the Court recognizes that the COVID-19 threat has passed and that the foreclosure sale may commence. The Commissioner shall hold all proceeds of the sale of the property in an interest-bearing account to the credit of this cause subject to the directions of this Court. Upon payment according to such directions, the Commissioner shall file an accurate accounting of the Commissioner's receipts and expenses.

5. Carol Monahan Jung, Esq. of Jung & Vassar PC is hereby appointed by this Court as Commissioner, and as Commissioner she shall henceforth sell the property at foreclosure sale to the highest bidder at the Commissioner's sale by public auction or by private sale, without an upset price, after first giving notice of such sale by publication in at least one newspaper regularly issued and of general circulation in the District of Hawai`i. Said notice shall be published once a week for at least three (3) consecutive weeks, with the auction to take place no sooner than fourteen (14) days after the appearance of the third advertisement. Said notice shall give the date, time, and place of the sale and an intelligible description of the property, including any improvements, and shall follow the format described in HRS §

667-20.  The Commissioner shall have further authority to continue the sale from time to time at the Commissioner's discretion.  Any change in the time, place, or terms specified in the original notice of sale requires that MLB ensure that the Commissioner publishes a new notice of postponed sale with the new terms, and such notice shall follow the format described in HRS § 667-20.1.  The public sale shall take place no sooner than fourteen (14) days after the date of the notice of postponed sale, and not less than fourteen (14) days before the rescheduled date a copy of the new notice of postponed sale shall be posted on the mortgaged property and delivered to the Mohrs, MLB, and any other person entitled to receive such notifications.

6.    No bond shall be required of the Commissioner.

7.    In the event that the Commissioner refuses, or becomes unable, to carry out her duties set forth herein, the Court shall appoint another without further notice of hearing.

8.    The Commissioner shall sell the subject property by foreclosure sale in its "AS IS" condition, without any representations or warranties whatsoever as to title, possession, or condition.

9.    The Commissioner and all persons occupying the subject property shall allow reasonable access to view the subject property, a minimum of two separate days prior to the

sale of the subject property, by means of an open house or other reasonable means.

10.   The fee of the Commissioner shall be such as the Court deems just and reasonable, together with actual and necessary expenses incurred with the sale of the subject property.

11.   The sale so made and confirmed shall perpetually bar the Mohrs and all persons and parties claiming by, through or under the Mohrs, except governmental authorities enforcing liens for unpaid real property taxes, from any and all right, title and interest in the subject property or any part thereof.

12.   MLB is hereby authorized to purchase the subject property at the foreclosure sale.  The successful bidder at the foreclosure sale shall be required at the time of such sale to make a down payment to the Commissioner in an amount not less than ten percent (10%) of the highest successful price bid, such payment to be in cash, certified check or cashier's check, provided that should MLB be the high bidder, it may satisfy the down payment by way of offset up to the amount of its secured debts.  The balance of the purchase price must be paid in full at the closing of the sale, which shall take place 35 days after entry of the order confirming the sale.  If the bidder fails to fulfill this requirement, the deposit shall be forfeited and applied to cover the cost of sale, including the Commissioner's

fee, with distribution of any amount remaining to be determined by the Court. Such payment is to be in cash, certified check, or cashier's check, provided that, should MLB be the high bidder at the confirmation of sale, it may satisfy the balance of the purchase price by way of offset up to the amount of its secured debts, as discussed above, as appropriate. Costs of conveyancing, including preparation of the conveyance document, conveyance tax, securing possession of such mortgage property, escrow services, and recording of such conveyance, shall be at the expense of such purchaser.

13. Pending the sale of the mortgaged property, the Mohrs shall take all reasonable steps necessary to preserve the real property (including all buildings, improvements, fixtures, and appurtenances on the property) in its current condition. The Mohrs shall not commit waste against the property, nor shall they cause or permit anyone else to do so. The Mohrs shall not do anything that tends to reduce the value or marketability of the property, nor shall they cause or permit anyone else to do so. The Mohrs shall not record any instruments, publish any notice, or take any other action (such as running newspaper advertisements or posting signs) that may directly or indirectly tend to adversely affect the value of the property or that may tend to deter or discourage potential bidders from participating

in the public auction or private sale, nor shall they cause or permit anyone else to do so.

14.   All persons occupying the mortgaged property shall leave and vacate the property permanently within sixty (60) days of the date of the Court's order finding that the COVID-19 threat has passed and the foreclosure may commence, each person taking with them their personal property (but leaving all improvements, buildings, and appurtenances to the property).  If any person fails or refuses to leave and vacate the property by the time specified in this Decree, the Commissioner is authorized and directed to take all actions that are reasonably necessary to bring about the ejectment of those persons, including obtaining a judgment for possession and a writ of possession.  If any person fails or refuses to remove his or her personal property from the premises by the time specified herein, any personal property remaining on the property thereafter is deemed forfeited and abandoned, and the Commissioner is authorized to remove it and dispose of it in any manner the Commissioner sees fit, including sale, in which case the proceeds of the sale are to be applied first to the expenses of sale and the balance to be paid into the Court for further distribution.

15.  The sale can be supplemented with the practices and procedures in the State of Hawai`i and Section 667 of the Hawai`i Revised Statutes.

16.  The Court reserves jurisdiction to determine the party or parties to whom any surplus shall be awarded herein.


## CONCLUSION

For the foregoing reasons, the Court GRANTS MLB's Motion for Summary Judgment, ECF No. 128, and DENIES the Mohrs' counter-motion for summary judgment, ECF No. 136.  Accordingly, MLB is entitled to, and the Court hereby issues, a decree of foreclosure on the subject property as outlined above.[26]

IT IS SO ORDERED.

DATED: Honolulu, Hawai`i, April 13, 2020.




_____
Alan C. Kay
Sr. United States District Judge


Mohr v. MLB SUB I, LLC, et al., Civ. No. 16-00493-ACK-WRP, Order Granting Defendant MLB SUB I's Motion for Summary Judgment and Issuing Decree of Foreclosure.

---

[26]  On April 8, 2020, the Mohrs filed a motion to continue the trial date and pretrial deadlines, ECF No. 147, which MLB does not oppose, ECF No. 148.  In view of this Order and Decree, that motion is denied as moot.