IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI`I

_____
                                )
SANFORD A. MOHR and TINA A.     )
MOHR, Individually and as       )
Co-Trustees of their October 15,)
1996 unrecorded revocable trust,)
                                )
            Plaintiffs,         )
                                )
       vs.                      )  Civ. No. 16-00493 ACK-WRP
                                )
MLB SUB I, LLC; JOHN DOES 1-20; )
JANE DOES 1-20; DOE PARTNERSHIPS)
1-20; DOE CORPORATIONS 1-20; and)
DOE ENTITIES 1-20,              )
                                )
            Defendants.         )
_____)

## ORDER GRANTING COUNTERCLAIMANT MLB SUB I, LLC'S MOTION FOR ORDER CONFIRMING FORECLOSURE SALE AND ENTRY OF FINAL JUDGMENT (ECF No. 193)

For the reasons set forth below, the Court GRANTS Counterclaimant MLB Sub I ("MLB"), LLC's Motion for Order Confirming Foreclosure Sale and Entry of Final Judgment (ECF No. 193). Specifically, the Court (1) approves the sale of the subject property ("Subject Property") as described in MLB's mortgage (dated April 16, 2004); (2) directs the Commissioner to convey title of the Subject Property to Sunshine Holdings LLC; (3) finds that the sale of the Subject Property to Sunshine Holdings LLC for the sum of $652,050.00 is fair and equitable under the circumstances; (4) authorizes the Commissioner to pay any delinquent and accrued real property taxes with respect to

1

the Subject Property from the foreclosure sale proceeds; (5) approves the Commissioner's reasonable expenses; (6) discharges the Commissioner upon conveyance and closing of the sale; (7) orders the closing and recording of the sale to occur within 35 days from the date of this Order; and (8) deems the right to seek a deficiency judgment as waived.

## BACKGROUND

Rather than reciting the long and complex history of this case, the Court focuses on those events relevant to the Motion before it now.[1]

The Mohrs filed their initial complaint in Hawai`i state court in 2005 seeking rescission of a note and mortgage on their home.  See ECF No. 38-4.  On April 13, 2020, after several years of litigation in federal court, two bankruptcies, the dismissal of several claims against different defendants, and appeals, this Court ultimately granted summary judgment to MLB and issued a decree of foreclosure authorizing MLB to foreclose on the mortgage against Plaintiffs' interest in the Subject Property.  See ECF No. 150 (the "Foreclosure Order").[2]  The

_____

[1]  The Court's prior summary judgment orders contain more detailed factual and procedural history.  See ECF No. 94 at 2-7; ECF No. 150 at 2-10.
[2]  In light of the Foreclosure Order being issued in the midst of the ongoing COVID-19 pandemic, the Court directed the appointed commissioner to hold off on commencing any actions to foreclose on the Subject Property until further order of the Court.  The Court subsequently authorized proceeding with the foreclosure.

Court reserved the question of the precise amount of the secured debt to be determined after the confirmation of sale. Id. at 37. Notably, MLB did not purport to seek a deficiency judgment to collect any debt exceeding the net foreclosure sale proceeds of the Subject Property, and counsel for MLB confirmed as much at the summary judgment hearing. See Foreclosure Order at 36 n.25.

On May 7, 2020, the Mohrs filed a notice of appeal, ECF No. 155, and one week later they filed a Motion to Stay. In their Motion, the Mohrs asked the Court to (1) stay the foreclosure proceedings pending the Ninth Circuit's decision on the merits of the appeal and (2) allow the Subject Property to act as collateral in lieu of a supersedeas bond. Mot. to Stay at 5-6. MLB opposed the Motion to Stay and requested that the Court require the Mohrs to—at a minimum—post a supersedeas bond valued at two years of rental income on the property. See Opp., ECF No. 163.

The Court held a hearing on the Motion to Stay on June 26, 2020. Counsel represented that the Mohrs were dealing with debilitating health and financial issues, which make posting a bond impossible. The Mohrs maintained that they continued to face financial hardship resulting from their ongoing health problems, as well as added health and economic difficulties resulting from the COVID-19 pandemic. ECF No. 166.

3

On July 7, 2020, the Court issued an Order Granting Plaintiffs' Motion to Stay Judgment & Decree of Foreclosure Pending Appeal ("the "Stay Order").  ECF No. 167.  Among other conditions, the Stay Order required the Mohrs to continue to comply with the Foreclosure Order's requirements for preserving the property in its current condition, and required the Mohrs to, inter alia, maintain adequate insurance and pay property taxes.  The Stay Order also allowed the Subject Property to serve as security during the pendency of the appeal, without any other bond requirements, pursuant to Federal Rule of Civil Procedure 62(b).

After the Ninth Circuit affirmed the Foreclosure Order in July of 2021, ECF No. 174,[3/] counsel for MLB requested that the Court authorize proceeding with the foreclosure as the Ninth Circuit had filed its mandate and the Hawaii Third Circuit Court had allowed public sale of property to proceed notwithstanding the ongoing COVID-19 pandemic.  ECF No. 176.

In response, the Mohrs informed the Court that they would be filing a petition for a writ of certiorari to the United States Supreme Court and therefore requested the Court to stay any further action until they received a ruling by the

---

[3/]  The Ninth Circuit panel subsequently voted to deny the Mohrs' petition for rehearing en banc.  ECF No. 175.

Supreme Court.[4/]  Id.  The Mohrs further requested that their mortgaged house continue to be the only required security, as the Court permitted during the stay of the foreclosure pending the appeal before the Ninth Circuit.  ECF No. 185.

The Court ruled that it had no jurisdiction to stay the mandate, as the decision appealed to the Supreme Court was not the Foreclosure Order by this Court but rather the Ninth Circuit's affirmance of that decision through its mandate.[5/]  Id. The Court also agreed with MLB that equitable concerns justify allowing the foreclosure to proceed.  As a result, the Court directed MLB to prepare a stipulation setting forth that the parties agree that the foreclosure sale would be conducted under conditions similar to those contained in the First Amended Emergency Order of the Circuit Court of the Third Circuit.  Id. After the stipulation was filed on October 1, 2021, ECF No. 188, the foreclosure proceeded.

On December 2, 2021, Commissioner Rebecca H. Colvin filed a Commissioner's Report noting, inter alia, that the foreclosure sale of the Subject Property took place on November 12, 2021.  ECF No. 190.  On December 29, 2021, MLB filed a

---

[4/]  The Mohrs filed their petition for a writ of certiorari on September 8, 2021.  ECF No. 183.  Their petition was denied on November 15, 2021.  ECF No. 189.
[5/]  On September 17, 2021, the Ninth Circuit denied the Mohrs' emergency motion to stay district court and/or appellate proceedings pending resolution of the petition for certiorari.  ECF No. 186.

Motion for Order Confirming Foreclosure Sale and Entry of Final Judgment.  ECF No. 193.  The Mohrs' Opposition was filed on February 1, 2022.  ECF No. 198.  MLB's Reply was filed on February 10, 2022.  ECF No. 199.  A hearing on the Motion was held on February 24, 2022.


## **STANDARD**

Under Hawaii law, a "court's authority to confirm a judicial sale is a matter of equitable discretion."  Sugarman v. Kapu, 104 Haw. 119, 124, 85 P.3d 644, 649 (Haw. 2004) (quoting Brent v. Staveris, 7 Haw. App. 40, 45, 741 P.2d 722, 726 (Haw. Ct. App. 1987) (citation omitted)).  Thus, "absent arbitrary action, the court has broad discretion regarding confirmation of judicial sales."  Id. (citation omitted).  In exercising its discretion, the "court should act in the interest of fairness and prudence, and with a just regard to the rights of all concerned and the stability of judicial sales."  Brent, 7 Haw. App. at 45, 741 P.2d at 726 (quoting Hoge v. Kane II, 4 Haw. App. 533, 540, 670 P.2d 36, 40 (Haw. Ct. App. 1983)).

In addition, a court should generally confirm the sale unless the price obtained shocks its conscience.  Sugarman, 104 Haw. at 127, 85 P.3d at 652.  A bid price may shock the court's conscience, for example, where it is grossly inadequate when compared to the value of the property sold.  Id.

## DISCUSSION

The Mohrs raised in their Opposition to MLB's Motion for Order Confirming Foreclosure Sale and Entry of Final Judgment (ECF No. 198) the issue of whether MLB maintained its existence throughout this litigation.  MLB argues that, although it filed a certificate of cancellation with the Delaware Secretary of State on February 22, 2021, it did not violate its obligation to maintain its existence as a limited liability company.  Because MLB never completed the winding up process, its erroneous certificate of cancellation had no legal effect. Further, by operation of Delaware law, MLB's mistaken filing of the certificate of cancellation was nullified by the filing of its certificate of correction, with retroactive effect since the Mohrs have not shown that they were substantially and adversely affected by the correction.

### I.   Applicable Delaware Law

Under Delaware law, a limited liability company is formed at the time of the filing of an initial certificate of formation in the office of the Secretary of State.  Del. Code Ann., Title 6 § 18-201(b).  The existence of the limited liability company continues "until cancellation of the limited liability company's certificate of formation."  Id.

"A Delaware limited liability company's dissolution may be characterized as the beginning of the end of its legal

7

existence.  Dissolution necessitates winding up, which commences upon dissolution.  Winding up is the process by which the dissolved limited liability company settles and closes its business, disposes of and conveys its property, discharges or provides for its liabilities, and distributes any remaining assets to its members and other constituents.  The cancellation of the company's certificate of formation is effected at the completion of winding up.  This marks the end of the entity's legal existences as a limited liability company."  Symonds & O'Toole, Symonds and O'Toole on Delaware Limited Liability Companies, Section 16.01 (2009 Suppl.).

To accomplish the cancellation of a limited liability company's certificate of formation, a certificate of cancellation must be filed in the office of Secretary of State upon the dissolution and the completion of winding up of the limited liability company.  Del. Code Ann., Title 6 § 18-203(a).  A certificate of cancellation that is filed prior to the dissolution or the completion of winding up of a limited liability company may be corrected as an erroneously executed certificate of cancellation by filing a certificate of correction, pursuant to Del. Code Ann., Title 6 § 18-211, with the Secretary of State.  Del. Code Ann., Title 6 § 18-203(b).  "The certificate of correction shall be effective as of the date the original certificate was filed, except as to those persons

who are substantially and adversely affected by the correction, and as to those persons the certificate of correction shall be effective from the filing date."  Del. Code Ann., Title 6 § 18-211.

## II.  MLB's Filings

MLB's Vice President-April Smith-signed a certificate of cancellation on February 22, 2021 and filed it with the Delaware Secretary of State.  Smith Decl. ¶ 4; see Mohr Ex. 2.  According to Smith, she failed to recall that MLB was to remain active until the completion of this litigation.  Smith Decl. ¶ 6. After realizing her mistake, a second Delaware LLC was formed on November 29, 2021 with the same name as MLB in an attempt to address the premature cancellation.  Id. ¶¶ 10, 11; see Mohr Ex. 3.  After consulting with its attorneys, MLB then filed in February of 2022 two certificates of correction:  (1) the first to nullify the earlier erroneous certificate of cancellation, and (2) the second to nullify the earlier erroneous certificate of formation.  Smith Decl. ¶ 12.  Both certificates of correction stated, "[d]ue to a clerical error, this filing was submitted erroneously."  See MLB Exs. 1 & 2.

## III. Analysis

As an initial matter, the 2021 certificate of cancellation has no effect as MLB did not complete the process of winding up.  The Mohrs cite Beaudry v. Harding, 104 A.3d 134

(ME 2014) for the proposition that an administratively dissolved LLC cannot prosecute an action.  As explained by the Maine statute cited in Beaudry, "[a]dministratively dissolved LLCs are those that the Secretary of State dissolves because the LLC fails to follow the procedures imposed by the Act, such as paying mandatory fees and penalties or filing annual reports." Id. at 136.  There is no claim here that MLB was administratively dissolved.  MLB, on the other hand, correctly cites precedent reiterating the Delaware statute permitting a certificate of cancellation only "upon the dissolution and winding up of the company." Trusa v. Nepo, No. CV 12071-VCMR, 2017 WL 1379594, at *7 (Del. Ch. Apr. 13, 2017).  Here, as in Trusa, MLB has not completed the prerequisite winding up process and thus remained in existence.  See Smith Decl. ¶ 15.

Even if MLB's erroneous certificate of cancellation had effect, MLB's subsequent certificate of correction would remedy the issue as the Mohrs have not claimed that the correction in any way affected them, let alone "substantially and adversely" affected them.  See Del. Code Ann., Title 6 § 18-211(a); Flatiron Acquisition Vehicle, LLC v. CSE Mort. LLC, No. 1:17-CV-8987-GHW, 2019 WL 1244294, at *12 (S.D.N.Y. Mar. 18, 2019) ("[A] company may file a certificate of correction that nullifies a previously-filed certificate of cancellation so long as the LLC has not finished the winding up process.").

As a result of these erroneous filings and MLB's failure to communicate, the Mohrs also claim fraud on the court.  See Opp. at 3 ("[W]hen asked by Plaintiff's counsel via email to prove that MLB existed, Mr. Daniel Kikawa advised Plaintiff's counsel that 'MLB exists as a Delaware LLC'" but withheld that MLB "was re-created as a new LLC . . . .").  However, the Court finds that the 2021 certificate of cancellation has no effect as MLB had not completed the process of winding up and consequently remained in existence; and therefore, no fraud upon the court was committed.  In any event, the standard for fraud on the court is extremely high.  Non-disclosure by itself generally does not constitute fraud on the court.  See England v. Doyle, 281 F.2d 304, 310 (9th Cir. 1960).  Similarly, perjury by a party or witness, by itself, is not typically fraud on the court.  In re Levander, 180 F.3d 1114, 1119 (9th Cir. 1999).[6/] MLB's actions were certainly sloppy, but the behavior does not rise to the level of fraud on the court.

**IV.  Conclusion**

In sum, because MLB never completed its winding up process, its erroneous certificate of cancellation had no legal

---

[6/]   The Mohrs cite Cvitanovich-Dubie v. Dubie, 125 Haw. 128, 144-46, 254 P.3d 439, 455-57 (2011) for further support on this issue.  But Dubie is a family law case, and the motion is made under Hawaii Family Court Rule 60(b)(6), rather than Hawaii Rules of Civil Procedure, as the Mohrs say.  In any event, Dubie echoes other cases in emphasizing that fraud on the court "only applies to very unusual cases involving 'far more than an injury to a single litigant[,]' but rather, a 'corruption of the judicial process itself.'"  Id. at 144, 455 (internal citation omitted).

effect.  Further, by operation of Delaware law, MLB's mistaken filing of a certificate of cancellation was nullified by the filing of its certificate of correction which has retroactive effect because the Mohrs have not shown that they were substantially and adversely affected by the correction.

## FINDINGS OF FACT[7/]

1.    This is a civil action regarding the foreclosure sale of the Subject Property identified as 73-4787 Halolani Street, Kailua-Kona, HI 96740 (TMK: (3) 7-3-047-016), and encumbered by mortgage dated April 16, 2004 held by MLB.

2.    Jurisdiction over this action is based on 28 U.S.C. § 1331, § 1332(a)(1), and § 1367(a).

3.    On April 13, 2020, this Court issued its Order Granting Defendant MLB's Motion for Summary Judgment and Issuing Decree of Foreclosure.  ECF No. 150.

4.    The Court finds the Mohrs total indebtedness under MLB's mortgage is in the amount of $1,223,617.33 as of January 19, 2022.  ECF No. 197 (Supplemental Declaration of April Smith).

5.    On December 2, 2021, Commissioner Rebecca H. Colvin filed her report detailing the foreclosure sale of the

---

[7/]  Where appropriate, findings of fact shall operate as conclusions of law and likewise conclusions of law shall operate as findings of fact.

Subject Property and the winning bid by MLB of $621,000.00 at the November 12, 2021 auction.  ECF No. 190.

6.   At the February 24, 2022 hearing on the Motion for Order Confirming Foreclosure Sale and Entry of Final Judgment, bidding was reopened and Sunshine Holdings LLC was the successful bidder with a bid of $652,050.00.  The Court finds that the winning bid of $652,050.00 by Sunshine Holdings LLC is a proper, fair, reasonable, and equitable bid for the Subject Property and is the best price attainable under the circumstances in light of the fact that, by agreement of the parties, no open houses were conducted and considering that the county's real property tax assessed fair market value of the property for 2021 is $621,000.00.  See Commissioner Report at 3 ¶ 13.  Accordingly, the Court approves the sale because the price is fair and equitable under the circumstances.

7.   The Commissioner submitted a request for reimbursement of actual and necessary expenses incurred in the sum of $867.02, payment of Commissioner's reasonable fees in the sum of $2,915.00 (approximately 0.4% of the purchase price), and general excise tax in the amount of $137.35, altogether totaling $3,919.37.  See Commissioner's Report at 4 ¶ 3.  The Court finds the same are reasonable and approves them.

8.   At the February 24, 2022 hearing, MLB waived any right to a deficiency judgment under its mortgage, any right to

13

reimbursement for advanced real property taxes, and any right to attorney's fees and costs.

## CONCLUSIONS OF LAW[8/]

Based on the foregoing findings of fact, the Court concludes as follows:

1.    The Commissioner's Report filed on December 2, 2021 (ECF No. 190) is approved.

2.    In accordance with the Order Granting Defendant MLB's Motion for Summary Judgment and Issuing Decree of Foreclosure, the sale of the Subject Property to Sunshine Holdings LLC for $652,050.00 is approved and confirmed.  The Court concludes that the sale price of $652,050.00 is proper, fair, reasonable, and equitable under the circumstances and the best price attainable under the circumstances.

3.    The Commissioner is authorized and directed to pay out of the foreclosure sale's proceeds all delinquent and accrued real property taxes, if any, with respect to the Subject Property, prorated as of the date of closing.

4.    The Commissioner is authorized and directed to execute a Commissioner's "As Is" Quitclaim Deed of the Subject

---

[8/]   Where appropriate, conclusions of law shall operate as findings of fact and likewise findings of fact shall operate as conclusions of law.

Property in favor of Sunshine Holdings LLC, free and clear of all interests and claims of all parties to this proceeding.

5.    Sunshine Holdings LLC as purchaser is directed to pay all costs of conveying the Subject Property, including preparation of conveyance documents, conveyance tax, and securing possession of the property, as well as the cost of any escrow services, and recording of the conveyance.

6.    Any persons still occupying the Subject Property shall leave and vacate the Subject Property permanently within twenty (20) days after the filing of this Order, each taking with them their personal property (but leaving all improvements, buildings, and appurtenances to the Subject Property).  If any person fails or refuses to leave and vacate the Subject Property by the time specified in this Order, the Commissioner is authorized and directed to take all actions that are reasonably necessary to bring about the ejectment of those persons, including obtaining a writ of possession.  If any person fails or refuses to remove his or her personal property from the premises by the time specified herein, any personal property remaining on the Subject Property thereafter is deemed forfeited and abandoned, and the Commissioner is authorized to remove it and dispose of it in any manner the Commissioner sees fit, including sale.  The sale proceeds are to be applied first to

the expenses of sale and the balance to be paid into the Court for further distribution.

7.    The Court reserves jurisdiction to enter such further orders as may be necessary or appropriate to assist Sunshine Holdings LLC to gain possession of the Subject Property.

8.    The Mohrs and all parties and persons claiming by, through, or under the Mohrs shall be forever barred from any and all right, title, interest, and claims at law or in equity to the Subject Property, except for any liens for real property taxes and assessments lawfully imposed by governmental authorities against the Subject Property.

9.    The Commissioner is authorized and directed to pay out of the foreclosure sale's proceeds the Commissioner's fees and expenses (totaling $3,919.37).

10.   Upon the filing of receipts for all disbursements made, the Commissioner is discharged from all further responsibilities and obligations relating to the Subject Property.

11.   Closing and recording of the sale shall occur within 35 days of this Order.

12.   The right to seek a deficiency judgment is deemed waived.  MLB did not purport to seek a deficiency judgment to collect any debt exceeding the value of the Subject Property,

and counsel for MLB confirmed as much at the summary judgment hearing. See Foreclosure Order at 36 n.25; see also MLB's Motion for Order Confirming Foreclosure Sale and Entry of Final Judgment (ECF No. 193) at 4 ¶ 8. At the hearing on February 24, 2022, MLB also waived any right to reimbursement for advanced real property taxes, and any right for attorney's fees and costs.

## **CONCLUSION**

For the foregoing reasons, the Court GRANTS MLB's Motion for Order Confirming Foreclosure Sale and Entry of Final Judgment (ECF No. 193).

Pursuant to Federal Rule of Civil Procedure 54(b), this Order shall be entered as a final judgment as there is no just reason for delay.

IT IS SO ORDERED.

DATED: Honolulu, Hawai`i, February 28, 2022.

Alan C. Kay
Sr. United States District Judge

Mohr v. MLB SUB I, LLC, et al., Civ. No. 16-00493-ACK-WRP, Order Granting Counterclaimant MLB Sub I, LLC's Motion for Order Confirming Foreclosure Sale and Entry of Final Judgment (ECF No. 193).